**BROWN KWON & LAM, LLP**
Clara Lam, Esq. (CL6399)
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5828
Fax: (718) 795-1642
clam@bkllawyers.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**DARNELL MOBLEY,**
***on behalf of himself and others similarly situated,***

        **Plaintiff,**

      **- against -**

**DAISY FLORAL SERVICES CORP**
    **d/b/a GRACELAND FLORIST,**
**JOSEPH EDWARDS, JR.,**
**JOSEPH EDWARDS a/k/a ROGER,**
**and ANNMARIE HOLZBERG,**

        **Defendants.**

**Case No: 7:24-cv-4418**

**COLLECTIVE AND CLASS
ACTION COMPLAINT**

---

Plaintiff DARNELL MOBLEY ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge as to himself, and upon information and belief as to other matters, by and through his undersigned attorneys, hereby files this Collective and Class Action Complaint against Defendants, DAISY FLORAL SERVICES CORP d/b/a GRACELAND FLORIST (the "Corporate Defendant") and JOSEPH EDWARDS, JR, JOSEPH EDWARDS a/k/a ROGER, and ANNMARIE HOLZBERG (collectively, the "Individual Defendants," and together with Corporate Defendant, the "Defendants") and alleges as follows:

## INTRODUCTION

1.     Plaintiff alleges on behalf of himself and similarly situated workers, who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), seeking from Defendants: (1) unpaid minimum wages, (2) unpaid overtime, (3) unlawful wage deductions/unpaid tools of the trade, (4) unpaid compensation for non-productive hours as piece-rate worker, (5) unpaid compensation due to piece-rate shaving; (6) liquidated damages, and (7) attorneys' fees and costs.

2.     Plaintiff further alleges on behalf of himself and similarly situated workers, pursuant to the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq*., and Article 19, §§ 650 *et seq*., the supporting New York State Department of Labor Regulations, seeking from Defendants: (1) unpaid minimum wages, (2) unpaid overtime, (3) unlawful wage deductions/unpaid tools of the trade, (4) unpaid compensation for non-productive hours as piece-rate worker, (5) unpaid compensation due to piece-rate shaving; (6) liquidated damages, and (7) attorneys' fees and costs.

3.     Plaintiff further alleges, pursuant to the New York State Human Rights Law, New York State Executive Law, Article 15 §§ 290 *et seq.* ("NYSHRL"), that Defendants engaged in discriminatory employment practices against Plaintiff on the basis of race discrimination. Plaintiff seeks declaratory, injunctive and equitable relief, and monetary damages, including (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

4.     Plaintiff further alleges breach of contract against Defendants and are entitled to recover from Defendants unpaid wages, interest, and other such relief.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

6. This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

7. This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

8. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**PARTIES**

*Plaintiff*

***DARNELL MOBLEY***

9. Plaintiff is an adult who resides in New York County, New York.

10. Plaintiff was a covered employee within the meaning of the FLSA, NYLL, and NYSHRL.

11. Plaintiff retained Brown Kwon & Lam, LLP to represent Plaintiff in this action and have agreed to pay the firm a reasonable fee for its services.

*Defendants*

12. At all relevant times, Defendants owned and operated two (2) floral shops and warehouses under the tradename Graceland Florist, with addresses as follows:

    a. 527 Gramatan Avenue, Mount Vernon, New York 10552; and

    b. 537 E Third Street, Mount Vernon, New York 10553.

    (collectively, "Graceland Florist").

13. At all relevant times, Graceland Florist is a family-owned floral business, owned and operated by related individuals over several generations. Graceland Florist was owned by

Individual Defendant Joseph Edwards and then it was passed down to Joseph Edwards Jr. At all relevant times, Plaintiff and similarly situated employees were able to communicate employment-related matters to any one of the Individual Defendants.

14. At all relevant times, Graceland Florist is partnered with 1-800-Flowers and provides local deliveries for the nationwide floral retailer. Graceland Florist further provides floral arrangements for events, including weddings and funerals.

15. At all relevant times, Defendants' business was to provide event flowers and to make local floral deliveries in Westchester, Upstate New York, and parts of Connecticut.

16. At all relevant times, Defendants operated Graceland Florist through the Corporate Defendant.

17. At all relevant times, Corporate Defendant had an annual dollar volume of sales in excess of $500,000.

18. At all relevant times, Defendants jointly employed Plaintiff and similarly situated employees.

19. At all relevant times, each Defendant had substantial control over Plaintiff's and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

20. At all relevant times, Defendants were and continue to be an employer within the meaning of the FLSA, NYLL and the NYSHRL.

21. Graceland Florist operates as a single integrated enterprise. Specifically, each of the Graceland Florist locations are engaged in the same business activities and have a common business purpose and share common ownership.

22.     Each of the Graceland Florist locations share supplies and employees, including Plaintiff and other delivery drivers regularly transferring supplies between the two locations and picking up floral arrangements from the other location to make deliveries.

23.     At all times, Graceland Florist applied the same employment policies, practices and procedures to all non-exempt employees at each of the Graceland Florist locations.

### DAISY FLORAL SERVICES CORP

24.     Defendant DAISY FLORAL SERVICES CORP is a domestic business corporation organized under the laws of the State of New York, with a principal place of business located and address for service of process located at c/o Daisy Floral Services Corp, 537 East Third Street, Mount Vernon, New York 10550.

25.     At all relevant times, DAISY FLORAL SERVICES CORP has done business as DAISY FLORAL SERVICES CORP.

26.     DAISY FLORAL SERVICES CORP is a covered employer within the meaning of the FLSA, NYLL and the NYSHRL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

27.     At all relevant times, DAISY FLORAL SERVICES CORP has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

### JOSEPH EDWARDS, JR.

28.     At all relevant times, Individual Defendant JOSEPH EDWARDS, JR. has been an owner and operator of DAISY FLORAL SERVICES CORP.

29.     At all relevant times, JOSEPH EDWARDS, JR. has had the power to (i) fire and hire employees, (ii) set their work schedules, (iii) determine their rate and method of pay, and (iv)

otherwise control the terms and conditions of their employment at DAISY FLORAL SERVICES CORP.

30.     At all relevant times, JOSEPH EDWARDS, JR. has had the power to hire, fire, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiff and similarly situated employees at DAISY FLORAL SERVICES CORP.

31.     At all relevant times, JOSEPH EDWARDS, JR. has had the power to maintain employment records, including time and/or wage records of employees at DAISY FLORAL SERVICES CORP.

32.     At all relevant times, JOSEPH EDWARDS, JR. has been actively involved in managing the day to day operations of DAISY FLORAL SERVICES CORP.

33.     At all relevant times, JOSEPH EDWARDS, JR. has had authority over personnel or payroll decisions and employment policies, practices and procedures at DAISY FLORAL SERVICES CORP.

34.     At all relevant times, JOSEPH EDWARDS, JR. has had the power to prevent or stop any unlawful pay practices that harmed Plaintiff and similarly situated employees.

35.     JOSEPH EDWARDS, JR. is a covered employer within the meaning of the FLSA, NYLL and the NYSHRL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

### JOSEPH EDWARDS a/k/a ROGER

36.     At all relevant times, Individual Defendant JOSEPH EDWARDS has been an owner and operator of DAISY FLORAL SERVICES CORP. At all relevant times, Individual Defendant JOSEPH EDWARDS was the father of Individual Defendants Joseph Edwards Jr. and AnnMarie Holzberg.

37.     At all relevant times, JOSEPH EDWARDS has had the power to (i) fire and hire employees, (ii) set their work schedules, (iii) determine their rate and method of pay, and (iv) otherwise control the terms and conditions of their employment at DAISY FLORAL SERVICES CORP.

38.     At all relevant times, JOSEPH EDWARDS has had the power to hire, fire, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiff and similarly situated employees at DAISY FLORAL SERVICES CORP.

39.     At all relevant times, JOSEPH EDWARDS has had the power to maintain employment records, including time and/or wage records of employees at DAISY FLORAL SERVICES CORP.

40.     At all relevant times, JOSEPH EDWARDS has been actively involved in managing the day to day operations of DAISY FLORAL SERVICES CORP.

41.     At all relevant times, JOSEPH EDWARDS has had authority over personnel or payroll decisions and employment policies, practices and procedures at DAISY FLORAL SERVICES CORP.

42.     At all relevant times, JOSEPH EDWARDS has had the power to prevent or stop any unlawful pay practices that harmed Plaintiff and similarly situated employees.

43.     JOSEPH EDWARDS is a covered employer within the meaning of the FLSA, NYLL and the NYSHRL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

*ANNMARIE HOLZBERG*

44.     At all relevant times, Individual Defendant ANNMARIE HOLZBERG has been an owner and operator of DAISY FLORAL SERVICES CORP. At all relevant times, Individual Defendant ANNMARIE HOLZBERG is related to Individual Defendants.

45.     At all relevant times, ANNMARIE HOLZBERG also worked as a manager for Corporate Defendant DAISY FLORAL SERVICES CORP.

46.     At all relevant times, ANNMARIE HOLZBERG has had the power to (i) fire and hire employees, (ii) set their work schedules, (iii) determine their rate and method of pay, and (iv) otherwise control the terms and conditions of their employment at DAISY FLORAL SERVICES CORP.

47.     At all relevant times, ANNMARIE HOLZBERG has had the power to hire, fire, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiff and similarly situated employees at DAISY FLORAL SERVICES CORP.

48.     At all relevant times, ANNMARIE HOLZBERG has had the power to maintain employment records, including time and/or wage records of employees at DAISY FLORAL SERVICES CORP.

49.     At all relevant times, ANNMARIE HOLZBERG has been actively involved in managing the day to day operations of DAISY FLORAL SERVICES CORP.

50.     At all relevant times, ANNMARIE HOLZBERG has had authority over personnel or payroll decisions and employment policies, practices and procedures at DAISY FLORAL SERVICES CORP.

51.     At all relevant times, ANNMARIE HOLZBERG has had the power to prevent or stop any unlawful pay practices that harmed Plaintiff and similarly situated employees.

52.     ANNMARIE HOLZBERG is a covered employer within the meaning of the FLSA, NYLL and the NYSHRL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

## FLSA COLLECTIVE ACTION ALLEGATIONS

53.     Plaintiff brings the First Cause of Action, the FLSA claims, on behalf of himself and all similarly situated current and former non-exempt employees, including all delivery drivers, employed by Defendants, from the date that is three (3) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter, and who elect to opt-in to this action ("FLSA Collective Members").

54.     At all relevant times, Plaintiff and FLSA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' common policies, practices, procedures and patterns with regards to their compensation, including their willful and repeated failure to pay Plaintiff and FLSA Collective Members their (i) proper minimum wages, (ii) proper overtime premium, (iii) reimbursement for tools of the trade, (iv) compensation for non-productive hours as piece-rate worker, and (v) full and proper wages due to piece-work shaving. Plaintiff's claims stated herein are essentially the same as those of the other FLSA Collective Members.

55.     All of the work that Plaintiff and FLSA Collective Members have performed have been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiff and FLSA Collective Members have performed.

56.     Defendants are aware or should have been aware that federal law required them to pay employees minimum wage and overtime wages for all of the hours they work.

57. For purposes of notice and other purposes related to this collective action, the names and contact information of FLSA Collective Members are readily available from Defendants' records.

## NEW YORK CLASS ACTION ALLEGATIONS

58. Plaintiff brings the Second Cause of Action, the NYLL claims, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("F.R.C.P."), on behalf of himself and a class of persons consisting of all current and former non-exempt employees, including all delivery drivers, employed at Graceland Florist, owned, operated, and/or controlled by Defendants, from the date that is six (6) years prior to the filing of the Class and Collective Action Complaint until the date of final judgment in this matter (the "Class" or "Class Members").

59. Excluded from the Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

60. Plaintiff is a member of the Class.

61. The members of the Class are readily ascertainable. The number and identity of the Class Members are determinable from Defendants' payroll and personnel records. The hours assigned and worked, the positions held, and the rates of pay for each Class Member are also determinable from Defendants' records. For the purpose of notice and other purposes related to this class action, their names and contact information are readily available from Defendants' records. Notice can be provided by means permissible under Rule 23.

62. The potential number of Class Members is so numerous that joinder of all members is impracticable, and the disposition of their claims through this class action will benefit both the

parties and the Court. Although the precise number of Class Members is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

63.     Plaintiff's claims are typical of those claims which could be alleged by any Class Member, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions.

64.     Plaintiff and Class Members were subject to the same practices of Defendants, as alleged herein, of (i) failing to pay minimum wages, (ii) failing to pay proper overtime, (iii) failing to reimburse unlawful wage deductions/unpaid tools of the trade, (iv) failing to pay compensation for non-productive hours as piece-rate worker, and (v) failing to pay full and proper wages due to piece-work shaving, in violation of the NYLL.

65.     Plaintiff and Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices and patterns of conduct. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member.

66.     Plaintiff and Class Members have all sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures under the NYLL.

67.     Plaintiff is able and willing to fairly and adequately protect the interests of Class Members and have no interests antagonistic to Class Members.

68.     Plaintiff is represented by attorneys who are competent, skilled, and experienced in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

69. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each individual Class Member are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for each Class Member to redress the wrongs done to them.

70. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of judicial and public resources; however, treating the claims as a class action would result in a significant saving of these costs. If appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

71. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and/or varying adjudications with respect to each Class Member, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof.

72. Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future

employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

73.     Common questions of law and fact exist as to Class Members that predominate over any questions only affecting Plaintiff and individual Class Members and include, but are not limited to, the following:

     a.  Whether Defendants employed Plaintiff and Class Members within the meaning of the NYLL;

     b.  Whether Defendants paid Plaintiff and Class Members at the lawful minimum wage rate;

     c.  Whether Defendants required Plaintiff and Class Members to work hours in excess of forty (40) per workweek;

     d.  Whether Defendants paid Plaintiff and Class Members their full and proper overtime wages for hours worked in excess of forty (40) per workweek;

     e.  Whether Defendants failed to compensate Plaintiff and Class Members for non-productive hours as a piece-rate worker;

     f.  Whether Defendants failed to compensate Plaintiff and Class Members for their full and proper wages due to piece-work shaving; and

     g.  Whether Defendants failed to reimburse Plaintiff and Class Members for unlawful wage deductions or costs incurred for acquiring and maintaining tools of the trade.

## STATEMENT OF FACTS

74.     In or around January 2021, Plaintiff was hired by Defendants to work at Graceland Florist, located at 527 Gramatan Avenue, Mount Vernon, New York 10552 and 537 E Third Street, Mount Vernon, New York 10553 as a delivery driver. Plaintiff was employed by Defendants until on or about February 23, 2024.

75.     At all relevant times, Plaintiff, FLSA Collective Plaintiffs and Class Members were employees and not independent contractors due to the following:

a. Plaintiff and similarly situated employees were an integral part of DAISY FLORAL SERVICES CORP's business. Plaintiff and similarly situated employees worked as delivery drivers, and delivered flower orders in Westchester and parts of Upstate New York and Connecticut. As a floral delivery company, which fulfilled the local delivery of nationwide retailers for flower deliveries, delivery drivers were an essential part of Defendants' business. As a delivery driver, Plaintiff delivered Defendants' products to its customers. Plaintiff and similarly situated employees worked under the direct instruction of Individuals Defendant.

b. Plaintiff's and similarly situated employees' duties/delivery routes were assigned to them by Individual Defendants and Plaintiff and similarly situated employees reported to them directly.

c. Plaintiff and similarly situated employees worked full-time hours set by Defendants, working a minimum of at least forty (40) hours per week. On occasion, Plaintiff worked over forty (40) hours per week when his assigned routes took longer than forty (40) hours to complete in a given workweek. Moreover, during specific holidays such as Valentine's Day and Mother's Day, the week leading up to, including the actual day of such holidays, were extra busy and all delivery drivers would work overtime hours. Similarly situated employees worked similar hours for Defendants.

d. Plaintiff and similarly situated employees worked for Defendants for an extended period. Plaintiff worked for Defendants for approximately three (3) years and similarly situated employees have similar permanent relationships.

e. Plaintiff and similarly situated employees were required to provide their own vehicles and to pay for their own gas and tolls, however, these costs should not be attributable to an investment in facilities or equipment. Defendants refused to reimburse them for their gas, tolls, and other vehicle-related expenses to offset Defendants' own business costs and expenses.

f. Defendants exercised a great deal of control over Plaintiff and similarly situated employees. Plaintiff and similarly situated employees were directly supervised by Individual Defendants and received feedback from Individual Defendants regarding their work performance. Plaintiff and similarly situated employees were not highly skilled laborers and Defendants are able to easily find new employees to fill their positions.

g. Plaintiff and similarly situated employees had no opportunity for profit or loss as they had no decision-making opportunity. Plaintiff and similarly situated employees were paid on a piece-rate basis per delivery.

h. Defendants also withheld taxes on Plaintiff and similarly situated employees' wage statements and were provided with W-2s.

76. At all relevant times, Plaintiff and similarly situated employees' workday consisted of arriving at their assigned warehouse. At the warehouse, they were provided with their deliveries for the day, which were based generally on their typical delivery routes. Thereafter, drivers would pick up the floral arrangements to be delivered on their list and make the relevant deliveries to customers. On occasion, Plaintiff and other delivery drivers were required (i) to pick up orders from the other location before beginning their delivery route, and (ii) to transfer boxes of flowers,

including miscellaneous flower orders, between the two locations before beginning their delivery route.

77. Transferring boxes of flowers back-and-forth between the two Graceland Florist locations and similar activities were nonproductive hours worked by Plaintiff, FLSA Collective Plaintiffs and Class Members, for which they were not compensated for since they were compensated on a piece-rate basis based on the number of floral deliveries completed. At all relevant times, Plaintiff and similarly situated employees spent approximately fifteen (15) to eighteen (18) hours per week completing nonproductive activities before they began their delivery routes.

78. At all relevant times, Plaintiff and other delivery drivers worked without any set schedules. At all relevant times, there was no set schedule as Plaintiff and other delivery drivers were compensated on a piece-rate basis and were paid based on the number of floral deliveries completed. At all relevant times, as a result of Defendants' policy to compensate Plaintiff and other delivery drivers on a piece-rate basis, Defendants did not compensate Plaintiff and other delivery drivers at least the prevailing statutory minimum wage rate for all hours worked up to forty (40) hours per week, and at time-and-a-half their regular rate of pay for their hours worked in excess of forty (40) per week.

79. From in or around January 2021 through in or around the end of December 2022, Plaintiff worked an average of six (6) days per week, and his shift began at or around 11:00am. On occasion, Plaintiff would start as early as 9:00am. Thereafter, his average shift would take at least eight (8) hours to complete his delivery route, depending on traffic, for a total of at least forty-eight (48) hours per week. From in or around January 2021 through in or around the end of December 2022, Plaintiff's gross pay for an average week was typically $400 to $500 per week,

resulting in a derived hourly rate of $8.33 to $10.42 per hour, which was at all times below that of the prevailing New York State minimum wage rate.

80.      From in or around January 2023 through on or about February 23, 2024, Plaintiff worked an average of five (5) days per week, and his shift began at or around 11:00am. On occasion, Plaintiff would start as early as 9:00am. Thereafter, his average shift would take at least eight (8) hours to complete his delivery route, depending on traffic, for a total of at least forty (40) hours per week. From in or around January 2023 through on or about February 23, 2024, Plaintiff's gross pay for an average week was typically $500 per week, resulting in a derived hourly rate of $12.50 per hour, which was at all times below that of the prevailing New York State minimum wage rate.

81.      At all relevant times, Plaintiff, FLSA Collective Plaintiffs and Class Members worked similar hours and were similarly compensated at derived hourly rates below that of the prevailing New York State minimum wage rate. At all relevant times, Plaintiff, FLSA Collective Plaintiffs and Class Members were not compensated at time-and-a-half their regular rate of pay for their overtime hours worked. Based on conversations with co-workers, other delivery drivers worked similar hours and were similarly compensated.

82.      At all relevant times, since Plaintiff was compensated on a piece-rate basis, at a rate of $7.00 for each delivery, he was not required to clock-in and clock-out. At all relevant times, when Plaintiff delivered "out-of-zone," Defendants were required to pay him $14.00 for such deliveries, however, throughout Plaintiff's employment, he was not compensated at this premium rate for deliveries made "out-of-zone."

83.      At all relevant times, in a given workweek, Plaintiff would make between fifteen (15) to twenty (20) "out-of-zone" deliveries per week. At all times, whether a delivery was "out-

of-zone" for Plaintiff was decided by Defendants. For these deliveries, Defendants were required to compensate him at $14.00 per delivery, but they failed to compensate him at the agreed-upon premium and would instead pay him $10.00 for such "out-of-zone" deliveries. As a result of Defendants' breach of contract, Defendants failed to properly compensate Plaintiff an average of $70 per week for such premiums.

84.     At all relevant times, Defendants had a policy of not compensating Plaintiff, FLSA Collective Plaintiffs and Class Members their full compensation at the piece-rate basis. Throughout Plaintiff's employment, on a monthly basis, Plaintiff's compensation was short by $120 to $150 per month. When Plaintiff complained to human resources regarding the shortages, he would not receive a response from human resources until weeks or months later, if at all. In a given year, approximately 3-4 of these monthly shortages were compensated at a later time following multiple complaints from Plaintiff. However, the majority of these monthly shortages, approximately 8-9 months of any given year, remain uncompensated even after Plaintiff demonstrated that he made the relevant deliveries. Other similarly situated employees were similarly not compensated their full and proper wages due to piece-rate shaving.

85.     At all times, Plaintiff, FLSA Collective Plaintiffs and Class Members were required to purchase, repair and maintain their own vehicles to perform their job for Defendants. The cost of Plaintiff's vehicle is $30,000.00. Class Members' vehicles cost similar or more. At all relevant times, the average annual cost for a car lease, repair, maintenance, insurance, and other related costs for the maintenance of a vehicle was approximately $1,500 to $2,000 per month. At all times, Plaintiff, FLSA Collective Plaintiffs and Class Members were not reimbursed for incurring such costs associated with Defendants' business.

86.     Moreover, Plaintiff's average daily cost for gas was approximately $30.00 to $35.00 per day, resulting in unreimbursed cost for gas of $150.00 to $210.00 per week. FLSA Collective Plaintiffs and Class Members incurred similar daily and weekly unreimbursed costs for gas. At all times, Defendants operated their business with a policy of not properly reimbursing any delivery driver for their out-of-pocket expenses for tools of the trade. As a result of Defendants' policy, at all times, Plaintiff's and other delivery drivers' effective rate of pay was further reduced.

87.     At all relevant times, as a result of Defendants' unreimbursed tools of the trade, Plaintiff's, FLSA Collective Plaintiffs' and Class Members' derived hourly rates of pay were even less than that of the FLSA minimum wage rate of $7.25 per hour. For example, just calculating the cost of gas per week for Plaintiff as an average of $180 per week, and Plaintiff's gross pay for an average week from 2021 through 2022 as between $400 to $500 per week, resulting in a derived hourly rate of pay ranging from $4.58 to $6.67 per hour, the derived hourly rate of pay was below even that of the FLSA minimum wage rate. Including Defendants' failure to reimburse Plaintiff, FLSA Collective Plaintiffs and Class Members for the cost of vehicles and the maintenance thereof, the derived hourly rates of pay should be even lower.

88.     At all relevant times, Plaintiff, FLSA Collective Plaintiffs and Class Members worked similar hours and were similarly compensated at derived hourly rates below that of the FLSA minimum wage rate. At all relevant times, Plaintiff, FLSA Collective Plaintiffs and Class Members were not compensated at time-and-a-half their regular rate of pay for their overtime hours worked. Based on conversations with co-workers, other delivery drivers were similarly compensated.

89. At no time were Plaintiff, FLSA Collective Plaintiffs and Class Members paid the proper minimum wage and overtime. At no time were Plaintiff, FLSA Collective Plaintiffs and Class Members paid their full and proper wages.

90. Defendants knowingly and willfully operated their business with a policy of failing to pay the full and proper wages to Plaintiff, FLSA Collective Plaintiffs and Class Members for all hours worked, in violation of the FLSA and NYLL.

91. Defendants knowingly and willfully operated their business with a policy of failing to reimburse Plaintiff, FLSA Collective Plaintiffs and Class Members for costs incurred for tools of the trade, in violation of the FLSA and NYLL

## Discrimination and Hostile Work Environment

92. Plaintiff is Black-American.

93. At all relevant times, Plaintiff was subjected to a hostile work environment on the basis of race, and ultimately constructively terminated on or about February 23, 2024.

94. At all times, Graceland Florist is family-owned, and it is owned, operated and managed by Individual Defendants and their relatives.

95. Throughout Plaintiff's employment, Plaintiff interacted with AnnMarie, who was part of payroll, and is the daughter of Joseph Edwards a/k/a Roger and the sibling of Joseph Edwards Jr. Plaintiff regularly had to interact with AnnMarie to resolve payroll issues as he submitted his delivery sheets to AnnMarie to process.

96. AnnMarie Holzberg is Caucasian.

97. On or about April 27, 2023, AnnMarie referenced another Black-American employee as a "monkey." During the conversation, Plaintiff had asked AnnMarie regarding one

of his Black-American co-workers who he no longer saw at Graceland Florist and AnnMarie responded that she was fired and that "she was a monkey" in a racially derogatory manner.

98.     In Plaintiff's other interactions with AnnMarie, AnnMarie would regularly address Plaintiff in a racially degrading manner and call him "boy," as if he were a *slave*. When AnnMarie believed that Plaintiff accomplished something or had followed her directions/instructions, she would refer to him as a "good boy," as if he were a *dog*.

99.     AnnMarie also informed Plaintiff that they discussed Plaintiff at their family dinners and that they did not like him. This was also confirmed by Joseph Edwards a/k/a Roger.

100.    Throughout Plaintiff's employment, as a result of the racially hostile work environment, AnnMarie regularly prevented Plaintiff from being compensated his full wages. For example, even when his delivery sheets were timely submitted, AnnMarie would refuse to process his completed deliveries to timely pay him. This became a regular issue at Graceland Florist, which other employees were not subjected to. Due to the racially hostile work environment, Plaintiff had to regularly reach out to AnnMarie to correct his compensation. When Plaintiff reached out to AnnMarie, she was often rude, condescending, and displayed disdain for him even though he was merely inquiring regarding his compensation. At best, AnnMarie would plainly ignore Plaintiff's complaints of under compensation.

101.    Defendants' other relatives in management or human resource positions similarly treated Plaintiff in an unprofessional, hostile manner. For example, the head of payroll, Joseph Edwards's sister, Toni "Last Name Unknown," would also ignore Plaintiff's payroll inquiries for weeks to months even though he was inquiring regarding Defendants' underpayment of his wages and other payroll-related issues.

102. On at least one occasion, Plaintiff complained to Joseph Edwards a/k/a Roger regarding AnnMarie, and Joseph Edwards downplayed the situation and only responded that he would talk to his daughter, but it did not resolve or change AnnMarie's hostile attitude towards Plaintiff.

103. In another discussion with Joseph Edwards a/k/a Roger to address the issues with AnnMarie and the payroll issues, Joseph Edwards spoke to Plaintiff in a disrespectful manner, talking over Plaintiff, and down to Plaintiff, making degrading comments such as "not needing [Plaintiff] to think" and that Joseph Edwards "needs to wipe [Plaintiff's] a**."

104. Throughout Plaintiff's employment, these incidents happened on a frequent, regular basis with AnnMarie and Joseph Edwards treating Plaintiff in a rude and disrespectful manner on the basis of race.

105. At all times, Defendants also had preferential treatment for Caucasian employees. Plaintiff was given a less desirable delivery route as he had to drive to Connecticut, but his colleague, Joe Murphy, who was a Caucasian employee with a New York route, was compensated $15.00 for each stop, which was more than double what Plaintiff was compensated for a similar driving distance.

106. Plaintiff was subjected to a racially hostile work environment, and made multiple attempts with Defendants and their family members to resolve the hostile work environment. However, the hostility persisted and escalated, interfering with Plaintiff's compensation, and resulting in Plaintiff consistently being underpaid. As a result, Plaintiff was constructively terminated due to the racially hostile work environment.

107. Plaintiff was subject to a hostile work environment and Defendants' discriminatory practices and suffered from severe emotional distress due to the actions of Defendants and its

agents. As a direct result of Defendants' unlawful actions, Plaintiff suffered and continues to suffer from economic loss, severe stress, anxiety and emotional distress.

## STATEMENT OF CLAIMS

### FIRST CAUSE OF ACTION
### Violation of the Fair Labor Standards Act on Behalf of Plaintiff and FLSA Collective Members

108.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

109.    The minimum wage and overtime provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, apply to Defendants and protect Plaintiff and FLSA Collective Members.

110.    Defendants failed to pay Plaintiff and FLSA Collective Members the minimum wage for all hours worked up to forty (40) per workweek, and overtime wages for all hours worked in excess of forty (40) per workweek, to which they are entitled under the FLSA.

111.    At all times relevant, Defendants failed to pay Plaintiff and FLSA Collective Members their full and proper wages for all hours worked.

112.    At all times, Defendants failed to reimburse Plaintiff and FLSA Collective Members for tools of the trade and/or took improper wage deductions from Plaintiff and FLSA Collective Members.

113.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Members of their rights under the FLSA.

114.    Defendants' unlawful conduct has been willful and intentional. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Members the lawful minimum wage and overtime

for all hours worked when Defendants knew or should have known such was due. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and FLSA Collective Members.

115. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to the FLSA.

116. As a result of Defendants' willful violations of the FLSA, Plaintiff and FLSA Collective Members have suffered damages by being denied their full and proper wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, interests, and other compensation pursuant to the FLSA.

117. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Members and the actual compensation paid to Plaintiff and FLSA Collective Members should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

## SECOND CAUSE OF ACTION
### Violation of the New York Labor Law on Behalf of Plaintiff and the Class

118. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

119. At all times relevant, Plaintiff and the Class have been employees of Defendants, and Defendants have been employers of Plaintiff and the Class within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

120. At all times relevant, Defendants failed to pay Plaintiff and the Class for all wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations, including for overtime wages.

121. At all times relevant, Defendants failed to pay Plaintiff and the Class their full and proper wages for all hours worked.

122. At all times, Defendants failed to reimburse Plaintiff and the Class for tools of the trade.

123. Defendants failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff and the Class as required by the NYLL and the supporting New York State Department of Labor Regulations.

124. Defendants failed to properly disclose or apprise Plaintiff and the Class of their rights under the NYLL and the supporting New York State Department of Labor Regulations.

125. As a result of Defendants' willful violations of the NYLL, Plaintiff and the Class are entitled to recover from Defendants their unpaid minimum wage, unpaid overtime, unpaid wages, unreimbursed tools of the trade/illegal wage deductions, liquidated damages, reasonable attorneys' fees and costs, interests, and other compensation in accordance with the NYLL.

### THIRD CAUSE OF ACTION
### Discrimination in Violation of the NYSHRL

126. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

127. Plaintiff is an employee and a protected person within the meaning of the NYSHRL and Defendants are a covered employer under the NYSHRL.

128. At all relevant times, Plaintiff was a member of a protected class within the meaning of the NYSHRL.

129. Defendants violated Plaintiff's statutorily protected rights under the NYSHRL, New York Executive Law, Article 15 §§ 290 *et seq.*, by engaging in discriminatory employment practices, including and subjecting Plaintiff to a hostile work environment, based on his race. Defendants subjected Plaintiff to inferior terms, conditions or privileges of employment, including disparate pay and constructive termination, on the basis of his race.

130. Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYSHRL.

131. As a result of Defendants' unlawful employment practice, Plaintiff sustained injury, including economic damages, the past and future emotional distress, and the costs of bringing this action.

132. Due to Defendants' violations of the NYSHRL, namely, employment discrimination on the basis of race, Plaintiff is entitled to recover from Defendants: (1) an injunction ordering Defendants to cease its discriminatory practices as described herein; (2) economic damages; (3) compensatory damages; (4) punitive damages; and (5) attorneys' fees.

## FOURTH CAUSE OF ACTION
**Aiding and Abetting Discrimination in Violation of the New York State Human Rights Law**

133. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

134. Individual Defendants knowingly or recklessly aided and abetted the unlawful employment practices, discrimination and retaliation committed against Plaintiff in violation of the NYSHRL.

135. As a direct and proximate result of Defendants' unlawful conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic harm for which he is entitled to an award of monetary damages and other relief.

136.    As a direct and proximate result of Defendants' unlawful conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

137.    At all times, Defendants' unlawful conduct was knowing, malicious, willful, and/or in reckless disregard of Plaintiff's protected rights under the NYSHRL, for which he is entitled to an award of punitive damages.

## FIFTH CAUSE OF ACTION
### Breach of Contract

138.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

139.    At all relevant times, Defendants and Plaintiff had a contract that "out-of-zone" deliveries were to be paid at a premium of $14.00 per delivery.

140.    At all relevant times, Defendants breached the contract by compensating Plaintiff at a rate of $10.00 per "out-of-zone" delivery.

141.    As a result of Defendants' breach, Plaintiff suffered damages and is entitled to damages in an amount not presently ascertainable.

## SIXTH CAUSE OF ACTION
### Promissory Estoppel

142.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

143.    At all relevant times, Defendants made a clear and unambiguous promise to compensate Plaintiff at a premium rate of $14.00 per "out-of-zone" delivery.

144. At all relevant times, Plaintiff relied upon this promise from Defendants and performed his duty by completing Defendants' "out-of-zone" deliveries.

145. At all relevant times, Defendants had an expectation for Plaintiff to rely on this promise to complete and fulfill the "out-of-zone" delivery as these deliveries were an essential part of Defendants' business and were not part of Plaintiff's regularly assigned route. Such deliveries required additional time and gas to complete. Therefore, Plaintiff's reliance was both reasonable and foreseeable.

146. However, at all relevant times, Defendants failed to compensate Plaintiff at a rate of $14.00 per hour for "out of zone" deliveries. Instead, Defendants compensated Plaintiff at a rate of $10.00 per hour for "out of zone" deliveries.

147. As a result, Plaintiff suffered an injustice through Defendants' failure to fulfill their promise.

148. As a result, at all relevant times, Plaintiff suffered damages and is entitled to an amount that is not presently ascertainable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself, FLSA Collective Members and the Class, respectfully requests that this Court grant the following relief:

a. Certification of this case as a class action pursuant to Rule 23 of the F.R.C.P.;

b. Designation of Plaintiff as representative of the Class and counsel of record as Class Counsel;

c. An order awarding relief for Defendant's discriminatory conduct, including but not limited to economic, compensatory and punitive damages;

d. Pre-judgment and post-judgment interest;

e. Reasonable attorneys' fees and costs of this action;

f. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL and NYSHRL;

g. An award of unpaid minimum wage and unpaid overtime due under the FLSA and NYLL;

h. An award of unpaid wages resulting from Defendant's failure to pay wages for all hours worked, in violation of the FLSA and NYLL;

i. An award of unreimbursed tools of the trade;

j. An award of unpaid wages;

k. An award of liquidated damages as a result of Defendant's willful failure to pay full and proper wages for all hours worked, pursuant to the FLSA and NYLL;

l. An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein; and

m. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated:  June 10, 2024                                  Respectfully submitted,

                                                        **BROWN KWON & LAM, LLP**

                                    By:        */s/ Clara Lam*

                                              Clara Lam, Esq. (CL6399)
                                              521 Fifth Avenue, 17th Floor
                                              New York, NY 10175
                                              Tel.: (212) 295-5828
                                              Fax: (718) 795-1642
                                              clam@bkllawyers.com
                                              *Attorneys for Plaintiff*