Brown Kwon & Lam LLP
Attorneys at Law
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5828
Fax: (718) 795-1642
Email: info@bkllawyers.com

Writer's Direct: clam@bkllawyers.com
(212) 295-5827

July 17, 2025

**Via ECF**
The Honorable Philip M. Halpern, U.S.D.J.
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

    Re: *Mobley v. Daisy Floral Services Corp d/b/a Graceland Florist, et al.*
       Case No.: 7:24-cv-4418 (PMH)(JCM)

Dear Judge Halpern,

  This firm represents DARNELL MOBLEY ("Plaintiff) in the above-referenced matter. We write to respectfully request judicial approval of the parties' Fair Labor Standards Act ("FLSA") settlement agreement, attached hereto as **Exhibit A** (the "Settlement Agreement"), and subsequent dismissal of the matter with prejudice. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). The Settlement Agreement resolves Plaintiff's wage-and-hour claims under the FLSA and New York Labor Law ("NYLL") for the total amount of $9,000.00. As part of this motion, Plaintiff's counsel requests one-third (1/3) in attorneys' fees ($3,000.00) from the total settlement amount.

  Here, the parties submit that the terms of their proposed Settlement Agreement for Plaintiff's claims are fair, reasonable, and adequate. For the reasons outlined below, the Court should approve this $9,000.00 settlement as a fair, reasonable, and adequate compromise of Plaintiff's wage-and-hour claims against Defendants.

## BACKGROUND

  At all relevant times, Defendants owned and operated a flower delivery company and Plaintiff was employed as a delivery driver for Defendants. At all relevant times, Plaintiff was compensated on a piece-rate basis for each delivery. At all relevant times, Plaintiff worked for Defendants from in or around December 2021 through in or around February 2024, except that Plaintiff left Defendants' employment for approximately 3-4 months in or around 2022.

  On June 10, 2024, Plaintiff filed the above-referenced matter as a class and collective action, alleging Defendants failed to compensate Plaintiff and other delivery drivers at Graceland Florist their full and proper wages, including unpaid wages, unlawful wage deductions, unpaid tools of the trade, unpaid compensation for non-productive hours as a piece-rate worker, unpaid

compensation due to piece-rate shaving, and liquidated damages, in violation of the Fair Labor Standards Act, as amended ("FLSA") and the New York Labor Law ("NYLL"). Plaintiff additionally alleged that Defendants engaged in discriminatory employment practices on the basis of race, in violation of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").

On September 12, 2024, the parties participated in S.D.N.Y. Mediation, to no avail. Since then, the parties conducted discovery. Following Defendants conducting their deposition of Plaintiff and Plaintiff conducting the depositions of several of the Individual Defendants, the parties reached a settlement in principle.

## **THE SETTLEMENT IS FAIR AND REASONABLE**

Pursuant to *Cheeks*, "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court." *Cheeks*, 796 F.3d at 206; *see also Wolinsky v. Scholastic Inc*., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). "Generally, there is a strong presumption in favor of finding a settlement fair, as the court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzcha v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013). "Because *Cheeks* itself did not define the contours of the approval analysis or protocols it envisioned, most district courts within our Circuit turn to the multi-factor test set out in *Wolinsky* to evaluate whether an FLSA wage and hour settlement is fair and reasonable." *Cabrera v. CBS Corp*., No. 17 Civ. 6011, 2019 US Dist LEXIS 20963, at *13 (S.D.N.Y. Feb. 8, 2019) (internal quotation marks omitted).

Accordingly, in determining whether a proposed FLSA settlement is fair and reasonable, courts consider the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *See Wolinsky*, 900 F. Supp. 2d at 335. Based on these factors, the proposed settlement should be approved as fair and reasonable.

a. <u>Plaintiff's Range of Possible Recovery</u>

The first factor weighs in favor of approval. Here, the settlement amount is $9,000.00. *See* **Exhibit A.** Based on estimated damages calculations for Plaintiff's wage-and-hour claims, Plaintiff's range of possible recovery was between $0 and $68,099.73. In a best-case scenario, assuming that all of the disputed facts alleged by Plaintiff is entirely correct and that Plaintiff would prevail on all claims, Plaintiff's calculation of damages amounts to $68,099.73, representing $11,056.14 in unpaid wages, $7,084.00 in unpaid "out of zone" deliveries, $18,140.14 in liquidated damages, $21,819.44 in unreimbursed gas, and $10,000.00 in statutory damages pursuant to the Wage and Theft Prevention Act ("WTPA"). See **Exhibit B** for Plaintiff's assumptions and calculation of damages.

The $9,000.00 settlement amount is approximately 13.22% of Plaintiff's best-case, owed wages, including liquidated damages, statutory penalties and unreimbursed gas. Comparatively, the settlement amount of $9,000.00 represents a recovery of 49.61% of Plaintiff's best-case, owed

wages for his unpaid wage claims, excluding liquidated damages, statutory penalties, and unreimbursed gas. The $9,000.00 is also an 81.4% recovery of Plaintiff's best-case scenario for unpaid minimum and overtime wages, excluding all other damages. In light of the litigation risks discussed below, this settlement recovery is a fair and reasonable result.

      b. <u>Litigation Costs and Risks</u>

The second and third factors also favor approval. To date, the parties have already expended significant time and litigation costs in conducting discovery and depositions. If the parties were to continue litigation, the parties would still need to complete the remaining depositions, as well as post-deposition discovery. The parties would also have to expend further time and costs to move and oppose motions for summary judgment. Given that Plaintiff was compensated on a piece rate basis, and there are limited records as to the start and end times of Plaintiff's workday to determine whether Plaintiff was paid at least his minimum wage rate every workday and at least his overtime premium every workweek he worked more than 40 hours, this matter involves extensive questions of fact that cannot be resolved entirely without proceeding to trial. As such, further litigation would require significant time and expense. In addition, both sides face serious litigation risks relating to damages and liability.

Defendants maintain that Plaintiff was paid properly at all times and deny all of the allegations in the Complaint. Specifically, Defendants maintain that Plaintiff rarely, if ever, worked more than forty (40) hours per week. Defendants assigned Plaintiff delivery routes that required him to work no more than six (6) hours per day. Accordingly, even if Plaintiff was required to work six (6) routes per week, he was working fewer than forty (40) hours. Additionally, Defendants maintain that Plaintiff was always paid in excess of the minimum wage rate for the hours that he worked. Plaintiff was paid on a per delivery basis and was able to perform between three (3) and five (5) deliveries each hour that he worked. As a result, even if considering any out-of-pocket expenses incurred, such as for gas, Plaintiff was still earning in excess of the applicable minimum wage rates.

Plaintiff's position, on the other hand, is that the records demonstrate on at least a few occasions that Defendants failed to compensate him properly for all hours worked and that on at least some occasions, the derived hourly rate resulted in unpaid minimum wage, which would also require Defendants to reimburse gas for those specific workdays that the derived hourly rate fell below the prevailing minimum wage rate. Plaintiff further claims that at least for a few weeks out of the year, especially during holidays, Plaintiff is confident that he can demonstrate that he worked over 40 hours per week without proper compensation. However, since Plaintiff's records consist of only limited time periods out of his approximate two years of employment with Defendants, and the relevant records necessary to provide an approximation of Plaintiff's start and end time having been lost as they were not employee records but time stamp records for the delivery of floral arrangements to customers, whether Plaintiff would be able to demonstrate his work hours to the extent alleged in the Complaint pose a serious risk related to damages for Plaintiff. While some liability is ascertainable even off the limited records, if Plaintiff is unable to demonstrate that liability exists every week, Plaintiff's best-case scenario would be substantially reduced.

Defendants assert that they acted in good faith and that even if on occasion the derived hourly rate fell below the prevailing minimum wage rate or if Plaintiff worked over forty hours per week without proper compensation, the frequency of such events were nowhere near the

3

allegations set forth in Plaintiff's Complaint. Furthermore, some of Defendants' other assertions in the defense of this matter are that Plaintiff's piece rate considered the cost of gas and there was no separate agreement to reimburse Plaintiff for gas, that Plaintiff's regular workday was on average approximately 6 hours, and if so, no overtime hours were worked, that for Plaintiff's "out of zone" claim, there is no document setting forth that Defendants ever agreed to pay an "out of zone" delivery $14.00 as alleged by Plaintiff and that it was $10.00, which is the rate that Plaintiff received for at least some of his "out of zone" deliveries. If a factfinder agrees with Defendants' assertions, Plaintiff's damages would be significantly reduced by over 70% of Plaintiff's best-case scenario. This would reduce Plaintiff's best-case scenario of $68,099.73 to $17,503.52 (representing unpaid minimum wage and WTPA), resulting in the current $9,000.00 settlement being a 51% recovery without the risk of litigation and trial. Therefore, while Plaintiff is confident that he would ultimately be able to establish liability, there is significant risk with regards to damages as seen above, which would also require significant time, prolonged litigation, and a trial to determine damages.

As both sides face serious litigation risks relating to damages and liability, the parties believe that the settlement amount is fair and reasonable. Plaintiff is able to obtain recovery on some of his alleged damages without the burden of further litigation and trial. While Defendants deny the allegations in the Complaint, Defendants believe that the settlement is fair and reasonable so as to avoid the anticipated burden and expense of continued litigation and trial and the fee-shifting nature of FLSA cases.

    c.   <u>Arm's-Length Bargaining and Lack of Fraud or Collusion</u>

The fourth and fifth factors also weigh in favor of approval. The settlement was reached over the course of several months of negotiations and review of documents relevant to the claims of this lawsuit. Furthermore, Plaintiff's counsel has significant experience with FLSA claims.

Further, the red-flag issues identified in *Cheeks* are not present here. The Agreement does <u>not</u> contain an overly broad general release, or a confidentiality or non-disparagement provision. See **Exhibit A**. In order to resolve Plaintiff's non-wage claims, the parties have entered into a separate agreement, also dated July 16, 2025. This separate agreement contains a confidentiality provision and general release, but does not contain any type of clause that would prevent Plaintiff from discussing the settlement of their FLSA and NYLL claims. *See Chowdhury v. Brioni Am., Inc.*, No. 16 Civ. 344, 2017 U.S. Dist. LEXIS 196469, at *13 (S.D.N.Y. Nov. 29, 2017) ("Judges in this District routinely approve bifurcated settlement agreements, in which the parties submit their FLSA agreement for court review and approval but enter into a separate agreement that addresses the non-FLSA claims, which does not require judicial [review and approval] and may contain provisions that would be impermissible under *Cheeks*.") (citing *Ortiz v. Breadroll, LLC*, No. 16 Civ. 7998, 2017 U.S. Dist. LEXIS 73657, at *4-5 (S.D.N.Y. May 15, 2017); *Santos v. Yellowstone Props., Inc.*, No. 15 Civ. 3986, 2016 U.S. Dist. LEXIS 61994, at *3, n. 1 (S.D.N.Y. May 10, 2016) (approving bifurcated settlement agreements, one resolving plaintiff's FLSA claims and the other privately resolving plaintiff's discrimination claims and containing a general release).

Lastly, as will be discussed below, Plaintiff's counsel's requested attorneys' fees are not excessive as they only seek one-third of the settlement, which is typical of FLSA cases. The parties' separate agreement for the release of Plaintiff's non-FLSA claims also provides for attorneys' fees in the amount of one-third of the settlement amount. Based on the foregoing, there

is no evidence of fraud or collusion. Therefore, Plaintiff respectfully requests that the Court find that the Agreement is a "fair and reasonable" compromise of his FLSA claims against Defendants and approve the settlement.

## THE REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE

Plaintiff further seeks approval of attorneys' fees. In accordance with Plaintiff's contingency-fee basis retainer agreement with Plaintiff's counsel, the Agreement provides that Plaintiff's counsel will recover a total sum of $3,000.00. *See* **Exhibit A**. The amount requested for attorneys' fees is fair and reasonable as it was the fee agreed upon by Plaintiff in his retainer agreement, and a contingency fee of one-third is sufficient to account for the risks associated with representation.

Courts in this Circuit "regularly approve attorney's fees of one-third of the settlement amount in FLSA cases." *Meza v. 317 Amsterdam Corp.*, No. 14 Civ. 9007, 2015 U.S. Dist. LEXIS 166890, at *5 (S.D.N.Y. Dec. 14, 2015); *see also Ramirez v. Greenside Corp.*, No. 16 Civ. 726, 2017 U.S. Dist. LEXIS 30527, at *9 (S.D.N.Y. Mar. 3, 2017) (stating "contingency fees of one-third in FLSA cases are routinely approved in this Circuit"); *Leon v. Univ. 45 Fruit & Vegetable Corp.*, No. 19 Civ. 8266, 2020 U.S. Dist. LEXIS 48716, at *5 (S.D.N.Y. Mar. 20, 2020) (finding the amount of the fee award reasonable where "the attorneys' fees amount is approximately 33% of the [ ] settlement amount after costs"). Therefore, Plaintiff's counsel's attorneys' fees are fair and reasonable as it similarly seeks to approve a one-third contingency-fee arrangement.

In *Cheeks* review of an FLSA settlement without a common settlement fund, Courts are increasingly declining to apply the "lodestar cross check" to determine the reasonableness of attorneys' fees so long as the contractual contingency fee arrangement itself is reasonable. *Puerto v. Happy Life Home Health Agency Inc.*, 2023 U.S. Dist. LEXIS 212417, at *5-7 (S.D.N.Y. Nov. 29, 2023). "[C]ontractual contingency fee arrangement is to ensure recovery for an attorney *regardless of the number of hours actually expended by the attorney*." *Puerto v.*, 2023 U.S. Dist. LEXIS 212417, at *6, citing *Almanzar v. Silver Star Props. Corp.*, 2023 U.S. Dist. LEXIS 190515, at *2 (S.D.N.Y. Oct. 24, 2023). On that basis, a one-third recovery of the settlement amount is reasonable and regularly approved by Courts in this Circuit.

*          *          *

For the foregoing reasons, the Parties respectfully request that the Court approve the attached Settlement Agreement and dismiss the above-referenced matter with prejudice.

We thank the Court for its time and consideration.

Respectfully submitted,

*/s/ Clara Lam*
Clara Lam, Esq.
clam@bkllawyers.com

cc:    all parties via ECF